## LIGOWSKI CLAY-PIGEON CO. *v.* AMERICAN CLAY-BIRD CO.

*(Circuit Court, S. D. Ohio.* March 6, 1888.)

1. PATENTS FOR INVENTIONS—CLAY-BIRD TRAPS—INFRINGEMENT.

The only object of the invention, as stated in the specification. covered by letters patent No. 252,230, of January 10, 1882, to the Ligowski Clay-Pigeon Company, as assignee of George Ligowski, for "target traps," is to furnish a trap especially adapted for throwing the saucer or cup shaped flying target formed as a thin shell of clay or similar material, suitably hardened, and slotted at or near its periphery, and provided with a detachable tongue, embraced by letters patent No. 231,919, of September 7, 1880, to said Ligowski. In the trap used by the Amercan Clay-Bird Company, the clamp of the trap-lever is in form and construction so unlike that of the Ligowski patent that, while it can be used for throwing a saucer or cup shaped target, it cannot be made to throw the targets described in the Ligowski specification in the manner set out in his patents; nor, on the other hand, can the Ligowski clamp be made to throw the targets thrown by the American Clay-Bird Company's trap, unless they are provided with tongues, or their equivalents. *Held,* that the clamp of the American Clay-Bird Company's trap-lever was the equivalent of that of Ligowski, and being so, the fact that it might be an improvement did not render its use any the less an infringement.

2. SAME—LETTERS NO. 252,230—INVENTION.

The first claim of letters patent No. 252,230, of January 10, 1882, to the Ligowski Clay-Pigeon Company, as assignee of George Ligowski, for target traps, is as follows. "The combination, in a target trap, of a spring-lever, a rack, and an adjustable tension-arm carrying the trigger, with which latter is engaged said lever, as herein described." The holding clamp for grasping the target is omitted from the claim. The target referred to is that covered by letters patent No. 231,919, of September 7, 1880, to said Ligowski. *Held,* that the omission of the holding clamp did not invalidate the claim, that being susceptible of ready application in any desired form by a skilled mechanic, and that the limited combination in the claim was not anticipated by the patents to Bogardus, Call, and others in evidence; the saucer shape of the Ligowski target giving it, when projected horizontally or at an angle by the trap, a rapid rotation upon a vertical or inclined axis, and the concavity, which imprisoned the air, causing the target to rise in a curve with a downward convexity, like that followed by a bird rising from its cover; a result the exact reverse of that secured by previously known projectiles, and insuring, in addition, a gradual descent.

3. SAME—INFRINGEMENT.

The second claim of the same patent is for "the combination of spring-lever, head, segmental rack, adjustable tension-arm and trigger, as herein described." The third claim is for "the combination in the target trap of the head, having the spring portion of the lever coiled about it, the jointed standards, the notched knuckles, and the bolts and nuts connecting the same." The various styles of traps pictured in the circulars and advertisements of the American Clay-Bird Company, offered in evidence, showed a segmental rack in the same combination, and serving the same purpose, as that described in Ligowski's second claim. *Held,* that the second and third claims were valid. and infringed by said traps; every element of the third claim appearing in said traps, save for the substitution of the old and equivalent ball and socket joint for the knuckle joints.

4. SAME.

The fourth claim is for "the combination, in a target trap, of a clamp consisting of the bar, pivoted lever, spring, seven-threaded rod, and adjustable nut, as described." *Held* valid.

5. SAME—WANT OF NOVELTY.

The fifth claim of letters patent No. 252,230, of January 10, 1882, to the Ligowski Clay-Pigeon Company, as assignee of George Ligowski, for target traps, covers nothing more than a spring-latch. *Held* invalid, as not displaying invention, and the device being so old and well known that the court would take judicial cognizance of it without notice or proof.

**6. SAME—OMISSION OF ELEMENT FROM SPECIFICATIONS.**

In letters patent No. 252,230, of January 10, 1882, to the Ligowski Clay-Pigeon Company, as assignee of George Ligowski, for target traps, there is no mention of the pin, which is introduced in the clamp as a guide and fulcrum for the setting and discharge of the target. In a sui' for infringement by that company, the preponderance of the evidence was that the pin was added simply to serve inexperienced trappers as a guide in inserting the clay pigeon, that it originated long after the application for the patent; and that the trap could be successfully operated without it. *Held,* that the omission did not invalidate the patent.

**7. SAME—LETTERS No. 313,804—COMBINATION—NOVELTY.**

The invention in letters patent No. 313,804, of March 10, 1885, to the Ligowski Clay-Pigeon Company, as assignee of Jacob Bloom, for an improvement upon the Ligowski "target trap," covered by letters patent No. 252,230, has for its object to provide that trap with a second and weaker spring, coiled, reversely to the throwing spring, about the head of the trap, within the drum, and concentric with the actuating spring, and so adjusted as to intercept the throwing lever in the radial movement when at about its maximum speed, and then, gradually checking the throwing-arm, to return it to its position of rest. The violent recoil of the Ligowski arm is thus obviated, and the target is discharged with greater certainty, and with less liability to breakage. *Held,* that the patent was valid, Bloom being the first to demonstrate, by reduction to practical use, the utility and value of the combination of the two concentric springs, not only in the head of the trap, but also to apply such a combination of the concentric springs, acting on different *radii* in opposite directions, for any purpose whatever.

**8. SAME—ABANDONMENT—WHAT CONSTITUTES.**

The inventor in letters patent No. 313,804, to the Ligowski Clay-Pigeon Company, as assignee of Jacob Bloom, for an improvement upon the Ligowski "target trap," filed his application March 22, 1882. Notice of allowance was forwarded to him, and he, being compelled to go to Europe on business, left instructions with his clerk to pay the final fee within the statutory six months. He was absent more than a year, and some 10 months longer than he expected he would be gone. Upon his return he found that the fee had not been paid, and on August 6, 1883, he renewed his application, which was allowed September 20, 1883. In January, 1884, a new specification was filed, and the two original claims expanded to eight. The patent was allowed February 19, 1885. *Held,* that the date of the original application was the one to which reference should be made in determining whether or not there had been two years' public use and sale of the invention before application, there being nothing in the evidence to warrant the conclusion that Bloom had at any time abandoned either his invention or his application.

In Equity.

*Parkinson & Parkinson,* for complainant.

*L. M. Hosea* and *W. Merrill,* for respondent.

SAGE, J. This is a suit for an injunction and account for infringement of letters patent No. 252,230, for target traps, granted complainant, January 10, 1882, as the assignee of George Ligowski, and No. 313,-804, granted complainant as assignee of Jacob Bloom, March 10, 1885, upon an application filed March 22, 1882, and renewed August 6, 1883, for an improvement upon the Ligowski invention described and claimed in No. 252,230. The object of the Ligowski invention, as stated in his patent, is to furnish a trap especially adapted for throwing flying targets, so constructed as to cause them to imitate the flight of a bird, and in the peculiar form shown in letters patent No. 231,919, [1] granted to Ligowski

[1] See 31 Fed. Rep. 466.

September 7, 1880. The Ligowski patent shows a trap consisting of a standard normally vertical, but so mounted that it may be adjusted to varying inclinations; a spring coiled about the standard, and having a tangential prolongation to serve as a throwing-arm; a trigger or trip-latch to hold the spring-arm or throwing-arm in its set position, and to be disengaged when a target is to be thrown; a clamp at the free end of the throwing-arm adapted to grasp the target at or near its periphery, and to hold it in a substantially horizontal position during the radial sweep of the throwing-arm until the latter attains its maximum velocity, when, as the specification states, the target is "automatically disengaged," and "skims off with a spinning action that closely imitates the flight of a quail." The trap is also provided with means for adjusting the operative force of the spring-arm, and for rotating the standard, about which the throwing-arm is coiled, and securing it in any desired position relatively to its base or tripod, which, in use, is generally staked to the ground. The Bloom patent is for improvements upon the Ligowski invention. The throwing-arm, instead of being a tangential extension of the coiled spring, as shown in the Ligowski patent, is a lever pivoted to the vertical standard. The spring is coiled about a drum upon the head of the standard, and its free end engages with, and is adapted to propel, the throwing-arm. The drum is flanged or grooved at its upper edge, to hold the upper coil of the spring against displacement when the trap is set. This arrangement, it is claimed, secures a more regular sweep of the throwing-arm. In the Ligowski trap, the sweep of the throwing-arm is arrested by the reversed strain of the coiled actuating spring, after the propelling strain is exhausted. Bloom provided the trap with a second and weaker spring, coiled reversely to the throwing spring, and so adjusted as to intercept the throwing lever in the radial movement, when at about its maximum speed, then gradually checking the throwing-arm, and returning it to its position of rest; whereas in the Ligowski trap the arm was suddenly checked, and flew back with a violent recoil. The result of Bloom's improvement is to discharge the target with greater certainty, and with less liability to breakage. The second spring is coiled about the head of the trap, within the drum, and concentric with the actuating spring. A wooden thimble is placed between the standard and the inner spring, to prevent the wear and friction of direct contact between the spring and the metallic standard. This thimble is also provided with a circumferential groove at its upper edge, to restrain the top coil of the inner spring. Both these traps were designed and are specially adapted for throwing a saucer or cup shaped flying target formed as a thin shell of clay, or similar material suitably hardened, and slotted at or near its periphery, and provided with a detachable tongue. For this target a patent was granted Ligowski, September 7, 1880.

The defenses are the invalidity of the patent sued upon, and non-infringement.

The first proposition is that Ligowski in his specification describes his invention as an improvement in target traps, whereby they are rendered

capable of throwing the "peculiar form of target seen in letters patent 231,919, granted September 7, 1880," and that this is set forth as the sole and exclusive purpose of the improvement. This statement is perhaps a trifle too strong, but it is true that the only object of the invention stated in the specification is to furnish a trap especially adapted for throwing the peculiar form of flying targets above referred to, and that was doubtless the only object the inventor had in view. It is urged that the tongue upon the target was its essential feature, and that the peculiar clamp at the end of the trap-lever was likewise the essential feature of the trap; that the patentability of either or both of the devices resides in the "unitary result" produced by the tongue attached to the target, and the clamp attached to the trap-arm; and that infringement can be predicated only upon the proposition that Ligowski's invention was broader than this, and included a concave target generally, and a trap of any description capable of throwing a concave target; for the clamp of the defendant's trap-lever is in form and construction so unlike that of the complainant that, while it can be used for throwing a saucer or cup shaped target, it cannot be made to throw the targets described in the Ligowski specification in the manner described in his patent, nor, on the other hand, can his clamp be made to throw the targets thrown by the defendant's trap, unless they be provided with tongues or their equivalents. In a word, the contention for the defendant is that the construction claimed for the patent on behalf of the complainant obviously requires an enlargement of the patentee's claims beyond the expressed limitations of the patent. The answer to this objection is twofold: (1) The clamp of the defendant's trap-lever is the equivalent of the complainant's. It may also be—for the use for which it was intended, and to which it is applied—an improvement. It is so varied in form and construction as to be adapted to grasp the target itself, and not to grasp the tongue of a similar target having a tongue attached; but the change did not make it any less an infringement. That *bona fide* inventors of a combination are as much entitled to equivalents as the inventors of other patentable improvements has been so often affirmed that no citation of authorities is necessary. (2) It is quite as well settled that the inventor is entitled to all the uses to which his invention can be applied; whether he or another conceived them, or whether he has specified them in his patent or not. To disregard these propositions would be almost to nullify the patent laws.

The defendant's attack is next upon the claims *seriatim.* The first claim is as follows: "The combination in a target trap of a spring-lever, a rack, and an adjustable tension arm carrying the trigger, with which latter is engaged said lever, as herein described." The holding clamp for grasping the tongue of the target is omitted from this claim, but it is insisted that, in order to sustain the claim, it must be understood as embodied in it, for the reason that without it the elements named do not constitute a target trap, and could not co-operate to produce any definite result; and also because such limited combination is anticipated by the patents to Bogardus, Call, and others in evidence. Prior to the intro-

duction by Ligowski of the saucer-shaped targets, artificial targets — generally of fragile balls — were used. These were projected by traps which were mere catapults, (as were the traps of Bogardus, Call, and others, referred to,) flying them into the air in a line always following a parabolic curve, having an upward convexity; while a bird rises in a curve having its convexity downward, until, attaining its altitude, it flies in a path substantially parallel to the ground. The new target was saucer-shaped, and to be projected horizontally or at an angle, by a force which would give it a rapid rotation upon a vertical or inclined axis, the concavity serving to imprison the air, whereby the target could be made to rise in a curve with a downward convexity, like that followed by a bird in rising from its cover, but the exact reverse of that followed by previously known projectiles; and further, insuring a gradual descent. The complainant's combination accomplished this result. He was the pioneer in this line of invention, and although each part of the combination was old, there was something more than an aggregation of old elements. A new and beneficial result—that of imparting to a projectile, by mechanical means, a rotation upon an axis at right angles to its movement in a new line of flight—was produced, and this is evidence of invention, as was held in *Loom Co.* v. *Higgins,* 105 U. S. 580. *Forbush* v. *Cook,* 2 Fish. Pat. Cas. 668, is authority for the validity of the claim, notwithstanding it does not include, in terms, the holding clamp, which could be readily applied in any desired form by a skilled mechanic.

The second claim is for "the combination of spring lever, P, *p,* head, M, segmental rack, O, adjustable tension arm, U, and trigger, V, W, as herein described." It simply introduces the additional element, the "head, M."

. The third claim is for the combination in the target trap of the head having the spring portion of the lever coiled about it; the jointed standards, the notched knuckles, and the bolts and nuts connecting the same. Exhibit "Clay-Bird Co. Circular," offered in evidence by complainant, shows a segmental rack in the same combination in traps manufactured and sold by defendant, and serving the same purpose as that described in the second claim. Every element of the third claim appears in each style of defendant's traps, excepting for the substitution of the old and equivalent ball and socket joint for the knuckle joints. What has been said as to the validity of the first claim applies with equal force to the second and third claims.

The fourth claim is for "the combination in a target trap of a clamp consisting of the bar R, *r',* pivoted lever S, *s',* spring, T', seven-threaded rod, *t',* and adjustable nut, *t',* as described." This claim is also held to be valid.

The fifth claim is, in the opinion of the court, invalid, for the reason that it does not display invention. It covers nothing more than a spring-latch, a device so old and well known that the court may take judicial cognizance of it without notice or proof. *Brown* v. *Piper,* 91 U. S. 44; *Terhune* v. *Phillips,* 99 U. S. 592; *Dunbar* v. *Myers,* 94 U. S. 187; *Slawson* v. *Railroad Co.,* 107 U. S. 652, 2 Sup. Ct. Rep, 663; *Wollensak* v.

*Reiher*, 115 U. S. 96, 5 Sup. Ct. Rep. 1137; *Drummond* v. *Venable*, 26 Fed. Rep. 243; *West* v. *Rae*, 33 Fed. Rep. 45.

A further objection to the validity of the patent is that the pin which is introduced in the clamp as a guide and fulcrum for the setting and discharge of the target is not mentioned in the patent, although defendant claims that it is proven to have been discovered before the patent was issued. Defendant urges that this pin is a most important element in assisting the target to release itself at the proper moment, and in economizing its acquired momentum. It is in evidence for the defendant that all the traps ever marketed were provided with this pin. One witness for the defendant testifies that from actual tests he found that without the pin the action of the trap was wholly unreliable, and three witnesses testify that the pin is important, and contributes vitality to the successful operation of the trap. On the other hand, six witnesses for the complainant testify to the successful operation of the trap without the pin, upon tests made by them or in their presence, and two,—Ligowski and Bloom,—that it originated long after the application for the patent. The application for the patent was filed May 16, 1881. Bloom testifies that the pin was placed upon the traps late in the summer of 1881. Ligowski testifies that the first traps manufactured and sold had no pins in the clamps, and were successful in operation, and the pin was added to the clamp to serve inexperienced trappers as a guide in inserting the pigeon. The preponderance of the evidence is decidedly in favor of the complainant, and the opinion of the court is that the objection is not well taken.

To the Bloom patent it is objected that in substance it covers only the addition of a "recoil," or buffer spring, to the Ligowski trap; that this did not involve invention, as buffer springs to receive the impact of the arm in traps were old; and springs coiled in similar relations were old in door springs, rocking-chair springs, etc. The court does not sustain this objection. Bloom was not only the first to demonstrate, by reducing to practical use, the utility and value of the combination of the two concentric springs in the head of the trap, with the throwing-arm, but he was also the first to apply such a combination of the concentric springs acting on different *radii* in opposite directions for any purpose whatever, and the court considers that he was entitled to a patent, unless the further objection now to be considered is fatal to its validity. Bloom filed his application for a patent, March 22, 1882. Notice of allowance was forwarded to him at Cincinnati. Leaving instruction with his chief clerk and book-keeper to pay the final fee within the six months required by law, he took his departure for Europe in the interest of the Ligowski Company, about the 1st day of May, 1882, expecting to be absent three or four months, but did not return until early in the summer of 1883. Shortly after his return he ascertained that his clerk had failed to forward the final fee, and the patent had not been issued. On the 6th of August, 1883, he renewed his application. It was allowed September 20, 1883; and in January, 1884, a new specification was filed, and the two original claims expanded to eight. The patent was allowed Febru-

ary 19, 1885. Witnesses for the defendant testify to sales by the Ligowski Company, of which Bloom was manager, of traps embodying the Bloom improvement, on June 28, 1881, when three sales were made, and in July, 1881, when two sales were made. With Bloom's amended specification, filed in January, 1884, was filed an affidavit that the invention had not been in public use or on sale for more than two years prior to August 6, 1883, and witnesses for the complainant testify that all sales prior to that date were of the single-spring or Ligowski trap. The testimony in reference to this feature of the case is irreconcilable, and so conflicting, and so supported by circumstances on each side, that if the determination of the fact were necessary to the proper decision of the cause, it would involve a very close and critical examination, and a somewhat detailed statement of the depositions of the witnesses. But upon the authority of *Godfrey* v. *Eames*, 1 Wall. 317; *Smith* v. *Vulcanite Co.*, 93 U. S. 486; and *Graham* v. *McCormick*, 10 Biss. 39, 11 Fed. Rep. 859,—it is clear that the date of Bloom's original application is that to which the court must refer in deciding whether there had been two years' public use and sale of his invention before his application for a patent. There is nothing in the evidence to warrant the conclusion that Bloom at any time abandoned either his invention or his application for a patent.

The question of infringement remains to be considered. The trap first manufactured and sold by the defendant has a spring lever, a rack, and an adjustable tension arm carrying a trigger with which the lever engages, all combined and operating as does the same combination in the Ligowski patent. This form of trap is shown in complainant's exhibits, "American Field," and "American Clay-Bird Co. Circular." They also show a segmental rack having the same number of notches and projections shown in the drawings of the Ligowski patent. Complainant's exhibits—"Portion of Defendant's New Trap," and "American Clay-Bird Co. Trap, No. 4"—show, in place of the open notched rack, a rack having a series of perforations, with any of which the trigger-carrying arm may engage, but the perforated rack serves the exact purpose of the notched rack, and must be regarded as its equivalent. All these traps are therefore infringements of claims 1 and 2 of the Ligowski patent.

The trap which is in evidence and marked "Exhibit Defendant's Trap" shows a trigger-holding mechanism consisting of a single notch. It may be possible, but it is not practicable, to increase the tension by removing the trigger arm from the notch, and causing it to engage against the projection which forms the further side of the notch. That evidently was not intended, and an attempt at such adjustment would hardly occur to one using the trap. There is in this trap no infringement of the first or second claim of the Ligowski patent. Each of the four styles of defendant's traps infringes the third claim of the Ligowski patent. They substitute for the knuckle joints of the Ligowski trap the old and equivalent ball and socket joints, and they embody every other element of the claim, all combined and operating as described in the patent.

From what has already been said in reference to the target-holding or clamping mechanism of the complainant's traps and that of the defend-

ant's traps, it follows that defendant's infringe the fourth claim of the Ligowski patent. The fifth claim, having been found invalid, requires no further consideration. The defendant's also infringe the Bloom patent. The traps constructed as shown by exhibits, "American Field," and "Portion of Defendant's New Trap," have every element of every claim of the Bloom trap, combined and operated substantially as specified in the Bloom patent. The trap designated "Exhibit Defendant's Trap," has not "a trip-latch to which the lever may be connected at varying distances from its position of rest," and it is not, therefore, an infringement of the fourth claim, but it does infringe all the remaining claims. The trap constructed as shown by "Exhibit American Clay-Bird Co. Trap, No. 4," omits the recoil spring described and claimed by Bloom, but it embodies every other element of his patent, and is an infringement of the fourth and seventh claims.

A decree against the defendant for an injunction and account will be entered, but without costs as to the Ligowski patent, by reason of the invalidity of the fifth claim thereof.