ASSEFF et al. v. KINGSLAND, Commissioner of Patents.

Civ. A. No. 3967–47.

United States District Court
District of Columbia.

Oct. 1, 1949.

---

conditions cause deposits to form, resulting in ring sticking and bearing corrosion. In other words, plain lubricating oil is generally incapable of use by itself under vigorous operating conditions such as high temperatures. Ordinary lubricating oil, no matter how highly refined, deteriorates by oxidation or decomposition, and as a result of this deterioration either fails to provide adequate lubrication, or the by-products of such deterioration collect as deposits which interfere with the operation of the equipment being lubricated and, or, the operation of the oil as a lubricant. The plaintiffs' composition is claimed to consist of a chemical addition agent which eliminates the above-described disadvantages of ordinary lubricants. To accomplish these objectives the plaintiffs' patent application relates to the compounding of a lubricating composition in which the main or base constituent is a hydrocarbon oil such as mineral lubricating oil, and in which the minor constituent is a compound, the molecular structure of which includes the combination of zinc, the capryl alcohol radicle and the di-thiophosphate radicle. Other compounds may be included in the composition such as detergents, pour point depressors, and extreme pressure agents to meet particular problems of lubrication.

The plaintiffs' application was initially rejected in the Patent Office by the primary examiner on the grounds that (1) the eighteen claims before the Court lacked invention over a patent issued to Cook et al. (Patent No. 2,344,392), (2) that claims nine through twenty-four lacked invention over Cook and Salzberg patents (No. 2,063,629) in view of the patents to Wilson (No. 2,-280,419) and McNab (No. 2,289,795); (3) that claims sixteen, eighteen, twenty and twenty-one were too broad and indefinite in claiming "corrosion inhibitors". The Board of Appeals affirmed the decision of the primary examiner by a decision dated March 31, 1947. The defendant has, according to the complaint, refused to allow any of plaintiffs' claims on the ground that they are anticipated by the prior art, and the plaintiffs initiated this action within the statutory period seeking to compel the issuance of the patent sought by plaintiffs.

---

Oscar C. Limbach (of Oberlin & Limbach), Cleveland, Ohio, and Almon S. Nelson, Washington, D. C., for plaintiffs.

W. W. Cochran, Solicitor, U. S. Patent Office, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for defendant.

TAMM, District Judge.

In this action, brought under the provisions of § 4915 of the Revised Statutes 35 U.S.C.A. § 63, plaintiff Peter A. Asseff, as the original applicant, and the Lubrizol Corporation, as assignee of Asseff's right, title and interest in the said application, seek to have this Court order the defendant, the Commissioner of Patents, to issue a patent upon certain claims of the Peter Asseff application. Peter Asseff's application, Serial No. 457,746, was filed in the Patent Office on September 9, 1942. The claims of the patent application upon which plaintiffs base this action are claims numbered one, five, and nine to twenty-four, inclusive. The specification of the application describes the invention as one relating to lubricating compositions which are particularly suited for use under high temperature conditions such as those encountered in internal combustion engines of the Diesel type. It appears that ordinary lubricants utilized under the above-described

The plaintiffs' claims, numbering eighteen, as set forth in their complaint, all define a composition of matter designated either a lubricating composition (as in Claim one) or an addition agent (as in Claim twelve). All of the claims are distinguished by the inclusion therein of the "product obtained by preparing the zinc salt of the reaction product of capryl alcohol with phosphorus pentasulfide", and it is this "product" upon which the plaintiffs base their contention of patentable novelty in the claims. While certain of the plaintiffs' claims (such as nine, ten and eleven) call for an additional compound as a detergent, and others (such as claims fifteen and sixteen) call for an additional compound as a "corrosion inhibitor", all claims in this action are based upon "preparing the zinc salt of the reaction product of capryl alcohol with phosphorus pentasulfide".

## The Prior Art

On December 8, 1936, a patent (No. 2,-063,629) was granted to Paul L. Salzberg. et al. for a compound employed as "corrosion inhibitors * * * in lubricants for bearings which operate under high pressure". (p. 3, col. 2, lines 41-43). The Salzberg patent relates to the production of acid esters and salts of dithiophosphorus acid. Zinc is mentioned as one of the metals forming the salt (p. 3, col. 2, line 19) and the ester portion is provided by aliphatic alcohols containing at least ten carbon atoms (p. 1, col. 1, lines 33–36).

On July 14, 1942 a patent was issued to John G. McNab on an application filed September 1, 1939 for compositions related to "improved lubricants and especially crank case oils for the lubrication of internal combustion engines and particularly for high pressure fuel injection engines such as Diesel engines". The McNab patent discloses the use of a salt of dithiophosphoric acid ester, specifically calcium dioctyl dithiophosphate (p. 3, col. 2, line 70) in conjunction with metal soaps of natural and synthetic fatty acids and naphthenic acid (p. 2, col. 2, lines 56–61). The McNab patent shows the use of a salt of dithiophosphate ester in which the alkyl radicle contains eight carbon atoms (p. 3, col. 2, line 70). The McNab patent teaches that viscosity improving agents and pour point depressors may also be included for their particular function (p. 4, col. 2, lines 17–30).

On April 21, 1942, a patent was granted to Chester E. Wilson (No. 2,280,419) covering addition of constituents to mineral lubricating oils to give them special characteristics especially adapting them to severe service uses "such as are encountered in Diesel engines" (p. 1, col. 1, lines 1–6). The Wilson patent describes a lubricant containing an oil soluble salt of the so-called "Mahogany" sulfonic acids, including the zinc salt, together with oil soluble metal salts of theophenals (p. 1, col. 1, lines 37–45). The sulfonic acids are said to function as detergents, while the sulfor of the theophenol imports anti-corrosive properties (p. 4, col. 1, lines 35–43).

On March 14, 1944, a patent was granted to Elmer W. Cook et al. (No. 2,344,392) on an application filed November 8, 1941, as a continuation in part of an application filed July 11, 1941. This patent describes the preparation of heavy metal salts of the dicapryl ester of dithiophosphoric acid, and teaches that such salts are useful as sludge preventers and anti-corrosive agents for lubricating oils used in internal combustion engines (p. 1, col. 1, lines 8–11 and 42–47). Zinc is specifically mentioned as one of the heavy metals (p. 1, col. 1, lines 1–23). These heavy metal salts are stated to cooperate with the heavy metal salts of diamyl phenol sulfides described in Cook et al.'s patent (No. 2,299,626), as well as with alkaline earth metal salts of petroleum sulfonates (p. 1, col. 2, lines 48–53). The dithiophosphoric acid ester salts are described as being good detergents and to possess important non-oxidizing or anti-oxidant properties (p. 1, col. 1, lines 43–48). The conjoint use of the reaction product with other detergents and corrosion inhibitors is also taught by this patent.

On October 28, 1941 a patent was issued to Peter A. Asseff (No. 2,261,047), one of the plaintiffs herein, on an application filed on July 28, 1941, covering a compounded lubricant. The patent describes a zinc methyl cyclohexanol dithiophosphate salt

as an additive for lubricating oil, and discloses that metal phenates may be used in conjunction therewith (p. 2, col. 1, lines 6–12).

It will be observed that the claims here in issue relate in all instances to the use of a capryl alcohol, which alcohol contains only eight carbon atoms. Plaintiffs claim the use of capryl alcohol distinguishes their claims from Salzberg and McNab as outlined above. Salzberg utilized an aliphatic alcohol, but plaintiffs' witness, Dr. Smith, testified that capryl alcohol is an aliphatic alcohol. McNab (p. 3, col. 2, line 70) utilized an octyl alcohol and Dr. Smith testified that capryl alcohol is an octyl alcohol. (Tr. p. 103).

Long prior to plaintiffs' application for the patent here in suit, the art was conversant with the use of dioctyl dithiophosphate salt as indicated by the Salzberg and McNab patents heretofore briefly described. The alcohol used by plaintiffs falls clearly within the disclosure of the prior art. The preparation and use of the capryl ester was a logical and obvious adaptation of the teaching of the prior art, requiring for its accomplishment only the skill of the art. It is further noted that Salzberg indicates the equivalency of the calcium and zinc salts (p. 3, col. 2, lines 17–20) by specific reference to each, and it follows that plaintiffs' preparation of the zinc salt is plainly foreshadowed by the teaching of the prior art. The method of making the specific ester and salt therefrom were, of course, available to plaintiffs. Their production and use were no more than would be reasonably expected from one skilled in the art and did not constitute invention. Sonneborn Sons v. Coe, 70 App.D.C. 97, 104 F.2d 230; Rembert et al. v. Coe, 78 U.S. App.D.C. 51, 136 F.2d 793.

The Wilson patent described briefly above shows that the advantageous use of plural additives, and the addition of halogen containing componds, metal alcoholates and other compounds for their particular functions was recognized in the art. The plaintiff Asseff was following such prior art when he added a separate corrosion inhibitor, or a separate detergent, to dicapryl dithiophosphate salt. Applying these facts to plaintiffs' claims nine to twenty-four, the Court finds these claims lack invention and patentability over Salzberg, McNab and Wilson.

Claim one of plaintiffs' claims set forth a "lubricating composition containing a characterizing amount of the product obtained by the *simultaneous admixture* of capryl alcohol, phosphorus pentasulfide and zinc oxide." (Emphasis supplied.) Plaintiffs base strong contention for their claim of patentability over the Cook et al. patent, on the grounds of reduction to practice prior to the filing of the Cook patent. Evidence was introduced by plaintiffs in an effort to establish this prior reduction to practice. Insofar as Claim One is concerned, the plaintiffs' witness, Asseff, testified (Trans. pp. 67 and 68) that no exhibit offered by the plaintiffs related to any "simultaneous admixture" of zinc, capryl alcohol and phosphorus materials. Insofar as this claim is concerned, plaintiffs are therefore remitted to the filing date of their application, which date being subsequent to the filing date of the Cook patent establishes the Cook patent as prior art to plaintiffs' claim. Alexander Milburn Co. v. Davis-Bournonville Company, 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651; Minnesota Mining & Manufacturing Co. v. Coe, 69 App.D.C. 256, 100 F.2d 429. The Court accordingly finds for the defendant upon this claim.

Claim Five of plaintiff's application is as follows: "A lubricating composition for Diesel engines capable of inhibiting ring sticking and corrosion of the bearing surfaces of the engine with which the same comes in contact, specially when such bearing surfaces comprise a characterizing amount of a metal of the class consisting of nickel, copper, silver, cadmium, lead and tin, comprising major proportion of highly refined solvent extracted mineral lubricating oil having a viscosity index of the Dean and Davis scale of over 75 and a minor amount of the product obtained by preparing the zinc salt of the reaction product of capryl alcohol with phosphorus pentasulphide."

The plaintiffs in support of their contention as to the patentability of this claim

take the position that their work antedates the Cook application, admitting that the Cook patent discloses the subject matter of plaintiffs' claims. (Defendant's brief, p. 19.) As pointed out heretofore, plaintiffs' application here in action was filed on September 9, 1942. Cook et al., it will be recalled, filed their application,—which matured into patent No. 2,344,392—on November 8, 1941, as a continuation of an application filed July 11, 1941.

Plaintiff Asseff in his testimony identified Plaintiffs' Exhibit No. 23 as establishing the claims here in suit, referring specifically to the Code number 601-302 as first showing the preparation of the zinc capryl alcohol dithiophosphate. The plaintiffs' witness in answer to a question stated that this is the first time at which that particular compound was made. (Trans. pp. 66 and 67.) An examination of this exhibit discloses that this compound was first prepared on September 11, 1941 and tests started and completed between that date and October 1, 1941. It is observed from plaintiffs' brief (p. 21) that the statement is made with reference to the "use in a lubricant of the zinc salt of the acidic reaction product of capryl alcohol and $P_2S_3$" that "such invention was completed by Asseff with his engine tests completed October 3, 1941."

It has been established that the Cook application filed on November 8, 1941, was a continuation of the application filed on July 11, 1941. It so states on its face. (p. 2, col. 2, lines 29–31). Legally, therefore, the effective date of the Cook patent is July 11, 1941 since the two applications cover the same subject matter. Godfrey v. Eames, 1 Wall. 317, 68 U.S. 317, 17 L.Ed. 684; Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486, 23 L.Ed. 952. That the parent application's date is carried over to the continuing application or patent is well established. Hunt Co. v. Mallinckrodt Chemical Works, D.C., 72 F.Supp. 865; In re Lotz' Application, 57 App.D.C. 402, 17 F.2d 1008. Plaintiffs have therefore not only failed to carry the burden of proof to establish prior reduction to practice but their evidence, in the light of the above, requires a finding for the defendant unless plaintiffs'. claim is not covered by the Cook applications. An examination of the Cook parent application (P.'s.Ex.43) discloses that it embraces all the components of the reaction product defined in the plaintiffs' claims even to the preference for zinc as a heavy metal, that the actyl alcohol radicle is the preferred alkyl radicle and that capryl alcohol should be used. It follows that plaintiffs' claims, and particularly Claim Five, are unpatentable over Cook.

One further composition was described by plaintiff Asseff as a composition falling within the terms of Claims One and Five. This compound identified as Code number 601-310 is included in plaintiffs' Exhibit No. 24. The compound was made on September 18, 1941 and was "observed for short periods of storage" but no engine tests were ever run on this compound (Trans. pp. 57 and 69). While the case of Knutson v. Gallsworthy, 82 U.S.App.D.C. 304, 164 F.2d 497, 498, raises a question as to whether this action constituted a "reduction to practice", it is unnecessary to decide this point since the preparation itself was more than two months subsequent to the filing of the parent Cook application, and was, accordingly, covered by the prior disclosure of Cook as set out heretofore.

It appearing from the facts and findings set forth to this point that plaintiffs have failed to prove priority over Cook by establishing plaintiffs' Claims One and Five, it remains to consider the defendant's rejection of plaintiffs' Claims Nine through Twenty-four in the light of the Cook patent.

Plaintiffs' Claims nine, ten and eleven define the so-called zinc dicapryl dithiophosphate compound plus a separate detergent of the class containing a metal atom directly attached to an element of the class consisting of oxygen and sulphur. In Claim eleven the compound is described as a calcium salt of a petroleum sulfonic acid. It will be noted, however, that the Cook et al. patent teaches that the dithiophosphates may be used in combination with detergents. The heavy metal salts of diamylphenol sulfide disclosed in the Cook patent (p. 1, col. 2, line 49) respond to the definition of the separate detergent set out in

plaintiffs' claims nine and ten and since that same material is disclosed in the parent Cook application, that disclosure is prior art insofar as plaintiffs are concerned. Relative to plaintiffs' claim eleven, calcium petroleum sulfonate used as a detergent is old in the Wilson patent (p. 1, col. 2, line 10) and therefore the use of that compound with the dicapryl dithiophosphate of Cook is within the skill of the art.

Plaintiffs' claims fifteen and sixteen define the basic compound of claim one, heretofore set out on several occasions, plus a "separate oil-soluble organic corrosion inhibitor" (claim sixteen) defined in claim fifteen as "halogen bearing". Halogen bearing compounds are shown in Wilson (p. 6, col. 1, line 1) and the use of such compounds admixed as stated by Cook is non-patentable.

Plaintiffs' claim claims seventeen to twenty-one describe the basic product,— "the zinc dicapryl dithiophosphate compound" combined with the detergent of claim nine and the corrosion inhibitor of claim sixteen. However, it will be recalled that the Wilson patent teaches those skilled in the art to utilize a plurality of additive agents and the parent Cook et al. application disclosed that specific heavy metal salts of the dithiophosphoric esters disclosed therein should be used with other materials. There is, therefore, nothing inventive in these claims.

Plaintiffs' claims twenty-two, twenty-three and twenty-four, defining species of compositions under claim nine, include as the separate detergent a "metallic phenates" (claims twenty-two and twenty-three), or "magnesium phenate" (claim twenty-four). Phenates as additive agents are old in both the McNab (called "phenolates" therein) and Wilson patents. The inclusion of this material, old in the art, with the basic compound of the Cook patent is not new or inventive.

■ The findings of the Court having established that the plaintiffs' claims fail to antedate the anticipatory effect of the Cook et al. patent, which anticipates all of the claims of the plaintiffs herein; and that plaintiffs' claims nine through twenty-four lack invention and patentability over Mc-Nab, Salzberg and Wilson, it is unnecessary for the Court to pass upon the defendant's contention concerning the plaintiffs' failure to meet statutory requirements relating to particularity and distinctness.

Judgment for the defendant. Counsel will submit the necessary order.