# CARTY v. KELLOGG.

PATENTS; INTERFERENCES; ABANDONED APPLICATION; CON-
STRUCTIVE REDUCTION TO PRACTICE; PRIORITY
OF INVENTION.

Where C. after filing an application for a patent April 20, 1885, which
became abandoned October 21, 1887, filed another original ap-
plication November 17, 1887, and K. filed an original applica-
tion July 30, 1887, it was *held*, affirming a decision of the Com-
missioner of Patents, that C. failing to prove actual reduction to
practice, his abandoned application was only evidence of the
date of conception, and not evidence of constructive reduction
to practice; and that K. who first constructively reduced the
invention to practice by filing an application was entitled to
award of priority.

No. 43.  Patent Appeals.  Submitted November 18, 1895.  Decided
January 8, 1896.

HEARING on an appeal from a decision of the Commis-
sioner of Patents in a patent interference proceeding.  *Af-
firmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Barton & Brown* and *Mr. Henry A. Seymour* for
the appellant.

*Messrs. Baldwin, Davidson & Wight* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of
Patents in an interference proceeding, wherein the issue in
controversy is defined as follows:

"1. A metallic circuit telephone line extending in two
branches or limbs from a subscriber's station to the central
office, one of said branches or lines being open at the
switchboard and the other branch including the spring and

contact of a spring jack switch and a test battery, and extending from the test battery to the ground, in combination with switching devices at the central office to disconnect the grounded limb of said line from the test battery and to unite said metallic circuit with another telephone line for conversation.

" 2. In a telephone exchange system, metallic circuit, a subscriber's line normally disconnected from the ground at the subscriber's station, in combination with a calling generator in the circuit of said line at the subscriber's station, and a switch co-operating with the normally open ground to close the same while the generator is being operated.

" 3. In a metallic circuit exchange system, a subscriber's line normally disconnected from the ground at the subscriber's station and normally connected with the ground wire or connection at the central office and a calling annunciator in said ground wire or connection in combination with a calling generator at the subscriber's station in the circuit of said line, a ground wire or connection at the subscriber's station normally open to the line switching devices or means at the central office to temporarily disconnect said line from said ground wire or connection at the central office and connect it with another wire for conversation and switching devices or means at the subscriber's station to temporarily connect said line with said ground wire or connection at the subscriber's station while the generator is being operated with the generator between the ground connection and the calling annunciator.

" 4. In a telephone exchange system a metallic circuit line normally disconnected from the ground at the subscriber's station, a ground wire or connection at the central office, a battery in said ground wire or connection, and a switch at the central office having three contact pieces, two of which are normally in contact with each other and are not in contact with the third piece, one of said pieces which are normally in contact, being connected to said ground wire or connection with the battery between it and the

ground, the other of said pieces being connected to one side or branch of said metallic circuit line, and the other side or branch of said line being connected to said third contact piece, in combination with a double switch-plug having two insulated contact pieces adapted to be inserted into said switch, and when inserted to disconnect the contact pieces of the switch which are normally in contact and connect the two contact pieces which are connected to the two sides or branches of the line to the two insulated pieces of the plug (one piece of the plug to one piece of the switch and the other piece of the plug to the other piece of the switch), a test-receiving instrument at the central office, and switch testing devices or means whereby an operator may at will connect said instrument, grounded on one side, on its other side to said third contact piece connected to said open end of the line.

" 5. In a telephone exchange system, a metallic circuit line normally disconnected from the ground at the subscriber's station, one side or branch of which line is normally connected to a ground wire or connection at the central office and the other side or branch of which is open at the central office, and a battery and a calling annunciator in said ground wire or connection, in combination with a calling generator at the subscriber's station in said line, means for grounding said line at the subscriber's station when the generator is being operated with the generator between that ground connection and the office ground, a test-receiving instrument, and switch-testing devices or means whereby an operator may at will connect said instrument, grounded on one side, on its other side to said open end of the line.

" 6. In a multiple switchboard system, the combination with a metallic circuit telephone line extending to switches at the several boards, of a branch to ground adapted to be connected to one limb thereof, a battery in circuit with said line and a grounded operator's testing set adapted to be connected with the line whereby a test may be made at any board to determine whether the line is busy.

.The subject-matter of the invention is the same in each claim, and the sole question is as to priority. The first application involving the claim was filed in the Patent Office by the appellant John J. Carty, on April 20, 1885. On June 10, 1885, official notice was given him to the effect that his application was defective in certain particulars therein · pointed out and that in certain parts it was not fully understood. He was referred also to certain other claims shown in existing patents and required to furnish an additional drawing showing his several devices in combination in order that the circuits might be more readily traced. These requirements were never complied with, though on October 2, 1885, some immaterial amendments were submitted. He was immediately notified that his case awaited action as indicated in the former communication. No further action was had, and by operation of law—two years having expired since the last official action—the application became abandoned October 21, 1887. Kellogg's original application was filed July 30, 1887, and duly prosecuted to the issuance of patent, July 31, 1888.

Carty did not undertake to revive his original application, as he might have done by showing that his delay was unavoidable. R. S., sec. 4894; Rule 172. Instead, he filed the application now in controversy as an original one on November 17, 1887. . Several of the claims then made were rejected January 7, 1888, and objections were made to the specifications and drawings in certain particulars. On January 20, 1888, he was informed of certain references. Nor further action was taken by Carty until October 3, 1889, when he filed an elaborate amendment. In his letter accompanying the same he says: "I have inserted fourteen additional claims, the last seven being identically the claims issued to Kellogg, No. 388,886, which has not heretofore been cited as a reference by the office."

He asked also that an interference be declared with the patent of Kellogg, which, as we have seen, had issued July 31, 1888. Objections were made to the amended applica-

tion November 8, 1889, which were followed by another amendment February 13, 1890. One of the claims as thus amended was rejected, and certain other objections communicated February 21, 1890. The next proceeding in the Patent Office was an application by Kellogg for reissue, filed July 22, 1890. The first step taken by Carty after the last communication above mentioned was to file a brief notice December 2, 1891, directing the erasure of the rejected claim and the renumbering of his remaining claims consecutively. His case was then taken up for reconsideration, and on December 14, 1891, he was notified of objections to certain of his claims and that the remainder would be allowed, subject to an interference with the original patent of Kellogg. He did nothing more until November 4, 1893, when he filed a lengthy amendment, which was followed November 20, 1893, by another notice of incompleteness. He amended with promptness after this last notice, and the interference was then formally declared.

Kellogg has introduced no evidence, and relies upon his patent of 1888 and the application therefor for the date of his invention and reduction to practice. Priority of conception must be recognized in Carty under and by virtue of the disclosure made in his original application of April 20, 1885. It remains for him, however, to show a reduction to practice antedating the constructive reduction of Kellogg through his original application upon which patent issued. The testimony of Carty himself (and he had no other witness) fails to show an actual reduction to practice. He was the manager or engineer of an " express telephone system " in Boston when he conceived the invention, and in connection therewith he says: " I arranged a switchboard so as to employ some of the features which are made use of in my invention."

A complete test was not made, nor was it possible with the aforesaid system.

Failing in proof of actual reduction, Carty is forced to rely upon constructive reduction to practice, and, in order

to antedate Kellogg, he claims it by virtue of his abandoned application of 1885. It seems to be a reasonable and well established principle, conformed to in the practice of the Patent Office, that an abandoned application cannot be so considered. *Hein* v. *Pung*, Com. Dec. 68 O. G. 657. Having lapsed, it becomes inoperative for any purpose, save as evidence of the date of conception, and to that extent it has already been considered and its weight admitted.

Without seriously contending against the soundness of the general rule, counsel for Carty claim that there are certain equities in his case which entitle it to be considered as an exception. These are, first, that the lapse was caused through having to change his attorneys, and, second, that by mistake of the examiners of the Patent Office, or by their inadvertence, no reference was made to the pending application of Kellogg in the same subject-matter, and he was therefore in complete ignorance of that conflicting claim. The lapse of the application—its legal abandonment—was worked by the express command of the statute and cannot be relieved against in any other way than by a direct proceeding for the purpose. The statute provides that for failure to prosecute a claim within two years after any action therein, of which notice has been given, it shall be regarded as abandoned " unless it be shown to the satisfaction of the Commissioner of Patents that such delay was unavoidable." R. S., sec. 4894; Rule 172, Patent Office.

The only way in which the bar can be raised or avoided is provided in the statute itself, and is exclusive. An application to revive must be directed to the Commissioner in the first instance, accompanied by the evidence to show that the delay was really unavoidable. Carty made no attempt to revive, but accepted the abandonment of his first application as final and conclusive. The excuses now offered for his want of diligence in the prosecution of his claim are rather weak ; but were they of a nature to appeal strongly to a court of equity they could not be considered or made the basis of relief in a collateral proceeding. It follows that

as Kellogg's original application, upon which his patent issued, was a constructive reduction to practice the Commissioner did not err in awarding priority to him.

*The decision appealed from is affirmed, and the proceedings and decision herein will be certified to the Commissioner of Patents, as provided by law.*