## CAIN *v.* PARK.

PATENTS; EVIDENCE; JUDICIAL NOTICE; INTERFERENCE; REDUC-
TION TO PRACTICE.

1. Where in an interference proceeding a certified copy of an application for a patent is introduced in evidence, but no proof is made of its allowance and passage to issue, the Commissioner of Patents is justified in taking notice of the official entries of his office showing such allowance, and in considering such fact in making his decision.

2. Where a second application for a patent is filed within two years after the forfeiture of the first for failure to pay the final fee within the prescribed time after allowance, and a comparison of the two applications shows that the drawing of the first is the same as one sheet of the second, and additional drawings are filed with the second application and additional matter is included in the specification thereof which embodies some features not in the first, the applicant, on an interference on his second application, is entitled to have the benefit of his original application as a constructive reduction to practice of the invention set forth therein and embodied in the second application.

Patent Appeals. No. 105. Submitted November 21, 1898. Decided January 3, 1899.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Charles L. Sturtevant* for the appellant.

*Mr. William Quimby* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents awarding priority of invention to Kennedy Park in an interference proceeding having the following issue:

" In a sectional boiler, the combination of vertical pipes or chambers, rectangular headers, the ends of each of which are in substantially the same horizontal plane and connected to and securing together the front vertical pipes, rectangular headers, the ends of each of which are in substantially the same horizontal plane and connected to and securing together the rear vertical pipes, said headers being angularly set so that the inner faces of the front headers are opposite and parallel to the inner faces of the rear headers in lower planes, and a series of tubes longitudinally and angularly arranged and connected at their ends to each opposite pair of headers, each series of tubes and their connected headers constituting a section of the boiler."

The facts shown by the record are substantially the following:

Kennedy Park filed an application for patent on May 8, 1895, which disclosed the invention in controversy, but made no claim for the subject-matter of this issue. The records of the Patent Office show that this application was allowed November 16, 1895.

Park did not pay the office fee, and the patent was not issued.

On July 30, 1896, he filed the application on which this interference was declared. Comparison of the two applications shows that the drawing of the first is the same as the first page of the drawings of the second, and that the specifications of the first are incorporated in the second. Addi-

tional drawings were also filed with the second application, and additional matter is included in its specifications. These embody some new features of invention. Had he followed up his first application he could not, it seems, under the practice of the office, have had this new matter incorporated therein by amendment.

In an amendment of the second application filed October 3, 1896, he calls attention to the fact that the subject-matter of former claim 8, now changed to 6, is shown in his forfeited application of May 8, 1895. Attached to subsequent amendments, filed respectively December 28, 1896, and January 28, 1897, are affidavits declaring that applicant is the same person who filed the original application of May 8, 1895, which became forfeited November 16, 1895; that the invention forming the subject-matter of said claim 6, among others named, is substantially described in said application, and that he has never abandoned the said invention.

It appears from the testimony taken by Park that he conceived the invention in 1893, and made a drawing illustrating it, and explained it to others in that year and in 1894 and 1895. As early as December, 1895, he had patterns made for casting the headers. Tubes were purchased in April, 1896, and castings of headers, corner-columns, etc., were made in May. The boiler was completed and operated successfully in a boat in July, 1896.

Having been inspected as required by law, and pronounced safe and efficient, a permit was issued by the Secretary of the Treasury, on September 2, 1896, authorizing the grant of a certificate to any steamer using such a boiler.

John J. Cain filed his application December 11, 1895, and a patent was issued thereon June 2, 1896, No. 561,257. He took no testimony. His preliminary statement, filed March 3, 1897, in obedience to the notice of the declaration of interference, states that he conceived the invention on or about September 15, 1894, and explained it to others, and "that

no model of the invention has been made nor a generator constructed, and consequently no reduction of the invention to practice up to the present time."

We omit some of the evidence relied on by Park in explanation of delay in the matter of actual reduction to practice, in an attempt to show that he was exercising diligence therein when Cain entered the field, as unimportant in the view that we have taken of the case.

Under the evidence above stated, then, as there was no actual reduction to practice by Park before Cain's application was filed, his right to the priority of invention that has been awarded by the decision appealed from depends upon the answer to the question, whether his original application of May 8, 1895, can be regarded as a constructive reduction to practice?

Before passing to the consideration of this question, it becomes necessary to dispose of an objection made by the appellant to the consideration of the evidence of the allowance of that application. A certified copy of the application was introduced in evidence; but no proof was made of its allowance and passage to issue. The Commissioner, however, examined the files of his office, and finding that the said allowance had been formally entered, considered the fact in making his decision. The appellant is right in the contention that, as a general rule, nothing is to be considered as evidence in an interference case unless introduced into the record before final submission. But we think that neither the general purpose nor the efficiency of the rule is impaired by the creation of an exception thereto in favor of the consideration of a relevant and material fact contained in an order entered of record in the Patent Office in regular course of proceedings therein. It is not evidence for the interested party in the ordinary sense, but a record of official action in the office, and under the authority of the Commissioner, of which he may take notice in order that justice may be done.

We have heretofore held that, in passing upon an application for a patent, the Commissioner may go outside of the records of his own office, and take notice of the decision of the Supreme Court of the United States in a case wherein the invention had been considered. *In re Drawbaugh,* 9 App. D. C. 219, 257. And while this case is of a different character, in that it is a contest, primarily, between two rival claimants, still we see no good reason why upon the same principle the Commissioner may not at least take notice of the official entries made in his own office and under his own supervision.

Returning now to the main question, and considering all of the evidence in connection with the official record of the allowance of Park's original application, it is plain that it can not be regarded as an abandoned application within the provisions of Section 4894, Revised Statutes, and controlled in its operation as a constructive reduction to practice by the decision in *Carty* v. *Kellogg,* 7 App. D. C. 542, 545, 547.

The original application having never been formally abandoned, but having become forfeited simply by the applicant's failure to pay the final fee within six months after notice of its allowance, and the second or renewed application permitted by section 4897, Revised Statutes, having been filed within the two years from allowance, as required thereby, the effect to be given to the original application in the consideration of the second must be determined by the provisions of that section.

This is the first time, so far as we have been able to discover, that the precise question as presented here has come before the Commissioner of Patents or the courts for adjudication.

In 1885 the Commissioner was called upon to decide, in an interference, who was the junior party, as between a renewal applicant who had brought himself within the terms of section 4897 and an intervening patentee. After an extended discussion of both sections 4894 and 4897, he de-

clared the applicant to be the junior party, because his second application was a renewal and continuation of the first. *Thompson* v. *Waterhouse*, C. D., 1885, 2.

In the case of *Godfrey* v. *Eames*, 1 Wall. 317, which arose under the Patent Act of 1836, as amended in 1839, it appears that Godfrey had filed an application for a patent on January 31, 1855, which was rejected May 17, 1855, for want of novelty. On April 24, 1857, within the time prescribed by the rules, he submitted his case again. The old application was withdrawn, and a new one immediately filed, the withdrawal fee being credited on the deposit fee required with the new one. The descriptions and claims of the two were in some respects different, but it was admitted that the thing patented at last on March 2, 1858, might, if properly introduced, have been engrafted as an amendment in the first application. The action was for an infringement and the defense was the public use and sale of his invention by Godfrey for more than two years before filing the application for the patent. It was held that the two applications should be considered as parts of the same transaction and both as constituting a continuous application. In a later case in the same court the doctrine of *Godfrey* v. *Eames* was reaffirmed. *Smith* v. *Goodyear Dental Vulcanite Co.*, 93 U. S. 486, 492, 500. In that case nine years elapsed between the filing of the first application and that of the second, upon which the patent had issued. The first application was rejected three times, the last being on February 3, 1856, and remained in the office without withdrawal and return of fee. The second application was filed in 1864. It was said by Mr. Justice Strong, in delivering the opinion of the majority of the court:

"We are not aware that filing a second petition for a patent, after the first has been rejected, has ever been regarded as severing the second application from the first and depriving the applicant of any advantage he would have enjoyed had the patent been granted without a renewal of the

application.   The contrary was decided by the Circuit Court
for the Southern District of Ohio in *Bell* v. *Daniels*, 1 Fisher,
372, and *Blandy* v. *Griffith*, 3 Id. 609, and those decisions
are founded in justice and sound reason."

The Patent Office proceedings in both of the foregoing
cases occurred long before the enactment of section 4897,
the date of which was July 8, 1870.   But there is no change
in the statutes then in force that requires a departure from
the rule therein established, and it has been followed in
many cases in the circuit courts having their origin under
the later law, some of which are here mentioned.   *U. S.
Rifle & Cartridge Co.* v. *Whitney Arms Co.*, 14 Blatch. 94, 101;
*International Tooth Crown Co.* v. *Richmond*, 30 Fed. Rep. 775,
779; *Ligowski Clay Pigeon Co.* v. *American C. B. Co.*, 34 Fed.
Rep. 328, 333; *Dederick* v. *Fox*, 56 Fed. Rep. 714, 717; *Stir-
ing* v. *St. Louis Brewing Assn.*, 79 Fed. Rep. 80.

All of the foregoing cases were actions either at law or in
equity for the infringement of patents, and the question
actually involved and decided was, whether, in determining
the two years' public use by or with the consent of the in-
ventor, that time should extend to the date of the renewal
application or be carried back to the date of the forfeited
original application.

The effect of the original allowed or allowable application
as a constructive reduction to practice of the invention re-
described and claimed in the renewal application was not,
and could not have been, determined in any one of them.

Notwithstanding this, however, we are of the opinion that
the case as here presented falls within the rule established
by those cases.   We can see no distinction in principle be-
tween them.   Whilst this operation of the statute may work
hardship to other inventors, as has been forcibly suggested on
the argument, we can not escape the conclusion that if the
renewal application must be carried back and joined to the
original, so as to make of the whole one continuous pro-
ceeding, and thus bar the common right that would other-

wise have been acquired by the more than two years' public use, it must have the same effect upon the right to the monopoly claimed on behalf of an intermediate inventor. The words of the statute suggest no limitation to the first effect alone.

The original application, therefore, having been the equivalent of reduction to practice, that consequence must follow it into the renewal application, with which it is inseparably connected.

Section 4897, it may be remarked, places a limitation upon the time within which the inventor or his assignee is permitted to file this renewal application, and adds thereto, also, that upon its hearing abandonment shall be considered as a question of fact. After the two years shall have expired the inventor, only, can file a new application, which, however, must then stand by itself and upon its own merits.

From what has been heretofore said we are not to be understood as holding that a renewal application filed within the two years given therefor will, under all circumstances, relate back to the original and cut off all intermediate applicants and patentees. The statute contemplates the possible existence of facts and circumstances attending the action of the original applicant that might show an abandonment of the invention itself, notwithstanding there may have been no formal abandonment or withdrawal of his application. In such a case it would be wrong to allow him to come into the Office, instigated by the entry of a new and independent inventor into the field, and revive his original invention for the purpose of defeating his rival, for reasons similar in their nature to those which controlled the decision of the following cases: *Mason* v. *Hepburn*, 13 App. D. C. 86; and *Warner* v. *Smith*, 13 App. D. C. 111.

The evidence in this case does not show that Park ever contemplated the abandonment of his invention after filing his original application. Aside from the proceedings in the Patent Office, from time to time, there is satisfactory evi-

14 Ct. App.—5

dence of a continuous intention to claim and perfect the invention. The evidence showing his efforts to construct a boiler in accordance with the description of his invention, and to operate it as the motive power of a boat, without regard to its sufficiency to show diligence in actual reduction to practice, clearly negatives the idea of an abandonment of the invention.

Having maintained his claim to the invention, and having acted in apparent good faith in the proceedings in the Patent Office, our conclusion is that he should have the benefit of his original application as a constructive reduction to practice of that invention.

It follows that the decision awarding priority to Park was right, and it will be affirmed, and the proceedings herein will be certified to the Commissioner of Patents. It is so ordered.                                            *Affirmed.*