68 U.S. 317
 17 L.Ed. 684
 1 Wall. 317
 GODFREY
v.
EAMES.
 December Term, 1863
 
 THE Patent Act of 1836, provides[1] that on the filing of an application for a patent, 'the commissioner shall make or cause to be made an examination of the alleged new invention or discovery, and if on any such examination it shall not appear to the commissioner that the same had been . . . in public use or on sale with the applicant's consent or allowance prior to the application, . . . it shall be his duty to issue a patent therefor, but whenever on such examination it shall appear to the commissioner that . . . the applicant was not the original and first inventor or discoverer thereof, or that what is claimed as new had before been invented or discovered, . . . or that the description is defective and insufficient, he shall notify the applicant thereof, giving him briefly such information and references as may be useful in judging of the propriety of renewing his application, or of altering his specification to embrace only that part of the invention or discovery which is new.
 'In every such case,' the act goes on to say, 'if the applicant shall elect to withdraw his application, relinquishing his claim to the model, he shall be entitled to receive back $20, part of the duty required by this act, on filing a notice in writing of such election in the Patent Office . . .. But if the applicant in such case shall persist in his claim for a patent, with or without any alteration of his specification, he shall be required to make oath or affirmation anew, in manner aforesaid, and if the specification or claim shall not have been so modified, as in the opinion of the commissioner shall entitle the applicant to a patent, he may on appeal, and upon request in writing, have the decision of a board of examiners,' &c.
 A subsequent act—an act of 1839[2]—provides that those who shall have purchased, sold, or made the thing patented 'prior to the application of the inventor or discoverer for a patent, shall be held to possess the right to use and vend to others to be used' the same; and that 'no patent shall be held to be invalid by reason of such purchase, sale, or use, prior to the application for a patent as aforesaid, except on proof of abandonment of such invention to the public, or that such purchase, sale, or prior use has been for more than two years prior to such application for a patent.'
 With these enactments in force, Godfrey, on the 31st January, 1855, filed an application for a patent for boot-trees. This application the commissioner, on the 17th May, 1855, rejected for want of novelty. On the 24th April, 1857, within the time required by the rules, Godfrey submitted his case again. The old application was withdrawn, and a new one filed, simultaneously; the withdrawal fee of $20 going to make part of the new application fee of $30, and not in fact being received by the applicant. These different applications were made through different attorneys, and the description of invention, the claims of novelty, and the models, were in some respects different. It was admitted, however, at the bar, 'that that which was finally patented might, if it had been properly introduced, have been engrafted as an amendment to the first application.' A patent was issued March 2d, 1858.
 It was part of the case 'that the patentee, in the summer and fall of 1854, and since, publicly manufactured and sold boot-trees containing his alleged invention.'
 On a suit by the patentee, Godfrey, in the Circuit Court for the District of Massachusetts, against Eames, for the use of the boot-tree patented, the question was, whether Godfrey had forfeited his patent by more than two years' public use or sale of his invention, prior to his application. The court below instructed the jury that he had; and accordingly that the plaintiff could not recover. The correctness of this instruction, was the matter now before this court on error.
 Mr. Causten Browne, for the plaintiff in error: The proceeding of Godfrey was in pursuance of a settled practice sanctioned by the Patent Office, and amounting simply to amendment and rehearing, with $10 additional fee. From the spring of 1855 (only a few months after the introduction of the invention into use), until the grant of the patent, there was, in fact, never a moment when the inventor was not applying to the commissioner for his patent. The case is one of two consecutive applications (no time intervening) for patent for an invention. Why is the patent declared invalid upon the ground that the latter one—that which immediately preceded the grant—is the only one to which the statute relates?
 There is no sufficient ground for such distinction upon the language of the statute, interpreted with reference to its reason and policy.
 The provision of the act has been construed liberally to uphold the patent.[3] The terms, 'his application for patent,' mean not any particular paper application, but his applying; his making an application; his preferring a demand for a patent for his invention as new and useful.
 Considered with reference to the policy of this provision, it is still more clear that it will not bear the construction given to it in this case by the court below. This policy was, that at as early a period as possible, having due regard to the rights of the inventor, the public should be put in possession of the best mode of practising the invention, by the deposit in the Patent Office of an open description thereof by the inventor.[4] This description being lodged, together with demand for patent, the public were secure of the means of practising the invention when the exclusive right of the inventor should terminate, and the inventor was secure of his protection unless he abandoned the pursuit of it. Undoubtedly after an inventor has filed his application for patent, he may so conduct himself as to show an abandonment of it. If rejected, he may allow the rejection to stand so long as to show, itself or with other circumstances, an acquiescence therein and a final relinquishment of his claim. But having once filed an application, given the details of his invention to the public knowledge, and asserted his claim to a patent, he has satisfied the reasons of the law of 1836; and although he should afterwards withdraw that application, and some time should elapse before he renewed it, it is a question for the jury, whether he has abandoned his claim to a patent, on which question the fact of withdrawal is evidence only, to be weighed with other evidence. But in this case, although no time intervened, the court peremptorily directed the jury to find for the defendant.
 2. If, indeed, the application was to patent something not existing in the first application, it cannot be considered a continuance of that application. But the fact that he changed his claim, or other part of his description, does not make it a different application; nor that he submitted new drawings; nor that he submitted a new model: if the drawings and model show a machine substantially the same as before, in construction and mode of operation. The same invention is disclosed in each, and might have been fully described and claimed in the first application; just as a reissue is a patent for the same invention as the original patent, if it was disclosed in the original application, and might have been then fully described and claimed. If the patentee in this case could have reissued a patent taken upon his original description and claim, so as to insert the present description and claim, the commissioner could have allowed a like substitution by way of amendment. A patentee is presumed to intent to claim all that is new with him. If it appears that the thing on which a patent was sought, was the same in the two cases, taking the model, description, and drawings together, then it is true that the inventor did, in 1855, put the public in possession of his invention, and of the best mode of practising it, and has ever since persisted in claiming a patent therefor; and the policy of the law, if rightly stated above, is satisfied.
 Mr. Brooks, for the defendant in error: The real question presented is, What became of this application for a patent, which had been 'once rejected,' but which was 'entitled to a re-examination?' Did the applicant 'PERSIST in his claim for a patent, with or without any alteration of his specification?' 'His claim' for a patent must, we suppose, be held to refer to the claim or application then before the Patent Office, and which had been once rejected. None other had been made, and none other could be persisted in. He did not persist in such claim; he did not ask for a 're-examination' of his application (the 'renewing his application' mentioned in the act of 1836); but he took the opposite alternative course authorized by that statute (though not named by the commissioner of patents), viz., he elected to withdraw his application, and receive the return fee of $20. Having made such election, he, in fact, did withdraw his said application on the 24th April, 1857, under the act of 1836, and did receive back the return-fee; and the 'said application' then withdrawn has never since been the subject of any action whatever anywhere.
 His proceeding is analogous to a discontinuance by a plaintiff in a court of law, and the commencement of another suit on the same day, in case the claims of invention and the causes of action were in each the same. In both instances, one proceeding is ended, and another is begun, even though both depended on the same ground precisely. The case is different where only an amendment is made, and the same suit is prosecuted in an amended form, without new process or new papers, or even loss of time.
 Now, it is a familiar principle, that an action at law must be commenced within the period limited for that purpose; and, if not so brought, it is not aided by the fact that another suit had been previously commenced within such time, and had been discontinued or dismissed. Were it otherwise, stale demands might be kept alive forever by means of suits not brought to trial. So in this case, if the doctrine of the plaintiff in error is correct, an inventor has it in his power, after putting his invention into public use, to apply for a patent, and taking care, in case of one rejection, to withdraw, and repeat the experiment toties quoties, he thus may, if finally successful, prolong the period of enjoyment much beyond that prescribed by law. In fact, if this view of the law is sanctioned by this court, it becomes the interest of inventors to delay the grant of patents as long as possible by this very method, in order to prolong the term of enjoyment. It is obvious, however, that the patent here in suit, like all others, was and could be founded upon one application only; and it appears that such application was made (April 24, 1857), more than two years after the public use and sale by the inventor of the alleged invention, whereby the said patent was made invalid.
 We do not put our defence upon the ground, that the withdrawal of the first application was an abandonment of his invention. It was merely an abandonment of that application, and left him at liberty to make other applications as like or unlike that as he pleased; but inasmuch as, in cases of withdrawal, the model and application-papers are retained in the Patent Office, and further proceedings to obtain a patent require new papers, differing from former ones at least in time of execution and filing, and also perhaps presented to officers not before having acted in the matter, a first application cannot, in the nature of things, be the second, nor a second be also the first.
 It will not, of course, be claimed that what was done in April, 1857, amounted merely to an amendment of his first specification, by writing it out anew, as is sometimes allowed to be done. For that purpose, no second fee or new petition, oath or model, was necessary; and, in such case, no return of fee could have been allowed.
 It is made the duty of the commissioner, by the act of 1836, to issue a patent upon an application duly filed, after due examination, if, among other things, it shall not appear that the alleged new invention had been in public use or on sale, &c., &c., (more than two years) 'prior to the application.' 'The application' must mean the one brought before him for examination, and not some previous application never perhaps known to him. The commissioner has no judicial discretion in receiving an application. The power of making one is given absolutely to the inventor. Can it, then, be pretended that the commissioner would or lawfully could have granted the patent in this case, had he known the fact of the public use and sale of the invention in 1854? 'The application' means the several papers required by law to entitle an inventor to an examination of his alleged invention, and which, if the patent is granted, are annexed to the letters-patent to distinguish it and fix its character. In this case, these papers were those filed in 1857, and none other; so that the prior application of 1855 is wholly immaterial, except upon the question of abandonment, which is not raised at all in this case. The applicant voluntarily substituted one application for another, as he says. If both were the same, his motive could not be one favored by the policy of the patent laws. If they were not the same, and he elected to give up one for the other, and did so, and got the benefit of so doing, he cannot rely now on both. If, as we understand the law, the specification makes the patent what it is, it is manifest that the application of January, 1855, was not patented in the grant made in March, 1858.
 [2. The counsel then contended that in fact the object for which a patent was applied for in 1855, was one so different from that one for which a patent did issue in 1858, that they could not be considered in substance the same thing; a matter involving a question of fact only.]
 Mr. Justice SWAYNE, after quoting the statutes of 1836 and 1839, delivered the opinion of the court:[5]
 
 
 1
 In this case the patenee filed his application in the Patent Office on the 31st of January, 1855, and from that time it was constantly before the office, until the patent was issued on the 2d of March, 1858, except that on the 24th of April, 1857, it was withdrawn and refiled on the same day with an amended specification. It was admitted and proved 'that the patentee, in the summer and fall of 1854, and since, publicly manufactured and sold boot-trees containing his alleged invention.' The sales and use as thus shown were less than two years before the first application was filed, and hence, according to the letter of the act of 1839, cannot affect the validity of the patent.
 
 
 2
 In answer to this, two propositions are relied upon by the plaintiff in error:
 
 
 3
 1. It is said the original and the renewed application are for patents for different things.
 
 
 4
 Both specifications are before us, and it is our duty to construe them.
 
 
 5
 The act of 1836 gives the applicant a right to change his specification after receiving the suggestions of the commissioner. Doubtless, this right exists and may be exercised independently of such suggestions, at any time before the commissioner has given his formal judgment upon the application; and the inventor may 'persist in his application for a patent, with or without any alteration of his specification.' A change in the specification as filed in the first instance, or the subsequent filing of a new one, whereby a patent is still sought for the substance of the invention as originally claimed, or a part of it, cannot in any wise affect the sufficiency of the original application or the legal consequences flowing from it. To produce that result the new or amended specification must be intended to serve as the basis of a patent for a distinct and different invention, and one not contemplated by the specification, as submitted at the outset.
 
 
 6
 We are satisfied that there was here such substantial identity in the two specifications as brings the case within the rule thus laid down. This objection cannot be sustained.
 
 
 7
 2. It is said that the withdrawal of the first application broke the continuity of the claim, and that the case stands as if the only application were the one of the 24th of April, 1857.
 
 
 8
 This question could not have arisen upon the same state of facts, under the act of 1836. According to that act, and the prior legislation of Congress, the public use or sale by the inventor of the thing invented, at any time before the application, was fatal to his claim for a patent. The act of 1839 relieved him from this consequence and introduced a new and more liberal policy. It gave him the right to apply for a patent at any time within two years after the use and sale of his invention, 'except on proof of the abandonment of such invention to the public.' The provision in the act of 1836, allowing the withdrawal of the application, was intended only to provide for the disposition in such cases of the duty which had been deposited, and to enable the applicant to resume a part of it upon the condition prescribed; it is silent as to everything beyond this, and we do not feel authorized to interpolate into the statute so important a qualification. The new provision in the act of 1839, is wholly independent of the act of 1836; by necessary implication it repeals the conflicting provision upon the same subject in the earlier act. It must be examined by its own light, and so construed as to give the fullest effect to the beneficent purpose of the legislature.
 
 
 9
 In our judgment, if a party choose to withdraw his application for a patent, and pay the forfeit, intending at the time of such withdrawal to file a new petition, and he accordingly do so, the two petitions are to be considered as parts of the same transaction, and both as constituting one continuous application, within the meaning of the law.
 
 
 10
 The question of the continuity of the application should have been submitted to the jury. In directing them to return a verdict for the defendant, we think the learned judge who tried the case in the court below, committed an error.
 
 
 11
 Mr. Justice CLIFFORD dissents.
 
 
 12
 JUDGMENT REVERSED AND VENIRE DE NOVO AWARDED.
 
 
 
 [1]
 § 7, 5 Stat. at Large, 119.
 
 
 [2]
 § 7; 5 Stat. at Large, 354.
 
 
 [3]
 Pennock v. Dialogue, 2 Peters, 18.
 
 
 [4]
 Pennock v. Dialogue, 2 Peters, 18; Ryan v. Goodwin, 3 Sumner, 518; Sparkman v. Higgins, 1 Blatchford, 208.
 
 
 [5]
 Mr. Chief Justice Taney and Messrs. Justices Wayne, Grier, and Field had not been present at the argument.